IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| DAVID G. ORTIZ | § | 05-39982 |
| | § | (CHAPTER 7) |
| DEBTOR | § | |
| | § | |

**AMENDED MEMORANDUM OPINION ON SANCTIONS IMPOSED AGAINST DAVID G. ORTIZ FOR FAILURE TO COMPLY WITH ORDERS OF THIS COURT**[1]

## I. INTRODUCTION

On January 4, 2005, the debtor, David G. Ortiz (Ortiz), an attorney at law, filed a *pro se* Chapter 7 petition, which was assigned Case No. 05-30453 (the first case). [Case No. 05-30453; Docket No. 1.[2]]  On May 31, 2005, Bankruptcy Judge Marvin Isgur dismissed the case with prejudice to refiling for 180 days. [Case No. 05-30453; Docket No. 11.]  Once again representing himself *pro se*, Ortiz filed a second Chapter 7 petition on June 29, 2005 (the pending case), thereby violating Judge Isgur's dismissal order.  [Docket No. 1.]  The U.S. Trustee then filed a Motion for Sanctions, to Dismiss Case and to Bar Future Filings Without Leave of Court (the Sanctions Motion), which Ortiz's creditors later joined.  [Docket Nos. 5, 14.]

On August 18, 2005, this Court abated the pending case for approximately 70 days so that Ortiz could return to Judge Isgur's court and seek modification or vacation of the dismissal order.

---

[1]This Amended Memorandum Opinion replaces the Memorandum Opinion docketed earlier in the day because the initial Memorandum Opinion had pagination problems.

[2]Unless another case number is indicated, as in this citation, docket references are to the docket in this case, Case No. 05-39982.

[Docket No. 10.]  On October 25, 2005, a status conference and evidentiary hearing were held on the Sanctions Motion.  Ortiz testified that he failed to return to Judge Isgur to seek modification or vacation of the dismissal order.  This Court recited its findings of fact and conclusions of law into the record on the Sanctions Motion.  [Docket No. 23.]  On November 17, 2005, this Court formally ordered sanctions against Ortiz (the Sanctions Order).  [Docket No. 26.]

Thereafter, Ortiz utterly failed to comply with the Sanctions Order, and the U.S. Trustee filed a Certificate of Non Compliance/Non Payment.  [Docket Nos. 29, 30.]  This Court then issued an Order Requiring Ortiz to Appear and Show Cause Why He Should Not Be Sanctioned and Held in Civil Contempt for Failing to Comply with the November 17, 2005 Sanctions Order.  [Docket No. 31.]  Although he was aware of this show cause hearing, Ortiz failed to appear at the hearing, and this Court thereafter issued a bench warrant for the U.S. Marshal's Service to take him into custody and produce him in court.  [Docket No. 40.]  Ortiz was aware of the bench warrant; however, he deliberately evaded the U.S. Marshals for several days, moving from hotel to hotel each night. Eventually, Ortiz retained counsel and appeared in court, at which time this Court imposed additional sanctions on him.  [Docket No. 43.]  This Memorandum Opinion discusses the additional sanctions this Court issued and the reasons for issuing them.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052.  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.  FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as adduced from the testimony of the witnesses, in chronological order, are as follows:

1.      Ortiz is an attorney practicing law in the State of Texas.  He has been admitted to practice law in the Southern District of Texas since February 1, 2002, and Ortiz is due to renew this admission in February of 2007.  He has previous experience filing for bankruptcy on his own behalf and also for a few clients.

2.      Ortiz filed the first case on January 4, 2005 in order to stay an eviction from a house which he was renting as a law office, not to have his debts paid through liquidation of non-exempt assets.  [*See* Case No. 05-30453, Docket Nos. 1, 3.]  On December 27, 2004, Benny Villareal (Villareal), Ortiz's landlord at that time, obtained a judgment and writ of eviction from a Harris County Justice Court as a result of an eviction suit Villareal filed based on Ortiz's failure to pay rent for December of 2004.  [*See* Case No. 05-30453, Docket No. 3.]  Ortiz soon learned about the writ of eviction, drafted a bill of review, and attempted to obtain a face-to-face meeting with the justice of the peace who issued the judgment and writ of eviction.  Ortiz was unable to do so and filed for bankruptcy on January 4, 2005 to stay Villareal's writ of eviction.  [Case No. 05-30453, Docket No. 1.]

3.      After Ortiz filed the first case on January 4, 2005, Villareal filed his Motion for Relief from Stay on January 7, 2005.  [Case No. 05-30453; Docket No. 3.]  Ortiz never responded to Villareal's Motion for Relief from Stay, and Judge Isgur signed the Default Order Granting Motion for Relief from Stay, which was entered on February 4, 2005.  [Case No. 05-30453; Docket No. 8.]

4.      Ortiz also failed to attend the § 341(a) meeting of creditors in the first case.

3

5.      On May 4, 2005, the U.S. Trustee filed a Motion to Dismiss in the first case for unreasonable delay, which "consist[ed] of failure of the debtor to appear at the original 341(a) meeting of creditors on February 8, 2005 nor did the debtor appear at the reset § 341(a) meeting of creditors set for February 22, 2005." [Case No. 05-30453; Docket No. 10.] Ortiz never responded to the U.S. Trustee's Motion to Dismiss, and on May 31, 2005, Judge Isgur dismissed the first case with prejudice to refiling for 180 days. [Case No. 05-30453; Docket No. 11.]

6.      Ortiz failed to monitor the docket in the first case or provide the Clerk of the Court or his creditors with a current address. All pleadings, orders, notices, and other documents in the first case were served at the address Ortiz provided to the Clerk of the Court.[3]

7.      Despite Judge Isgur's dismissal order with prejudice to refiling for 180 days, approximately 30 days later, on June 29, 2005, Ortiz filed a second bankruptcy petition, thereby initiating the pending case. [Docket No. 1.] Ortiz initiated the pending case in violation of Judge Isgur's dismissal order in the first case. [Case No. 05-30453; Docket No. 11.] Ortiz would eventually claim that he was aware that the first case had been dismissed, but he was unaware that it was dismissed with prejudice to refiling for 180 days until counsel for the U.S. Trustee telephoned Ortiz after he initiated the pending case to inform him that there was a bar to filing pursuant to Judge Isgur's dismissal order.

8.      Ortiz filed the pending case to stay a second, separate eviction from a building which he was renting as his law office. Ortiz filed the pending case the day before the hearing in state court on the eviction suit filed by his landlord at that time, Noelia Villareal Covarrubias (Covarrubias).

---

[3]The address which the Clerk used was the mailing address set forth in the petition that Ortiz filed initiating the first case. Ortiz provided no other address to the Clerk.

9.     The U.S. Trustee filed the Sanctions Motion on July 18, 2005, requesting this Court to dismiss the pending case, sanction Ortiz, and bar him from future bankruptcy filings without leave of court.    [Docket No. 5.]  The U.S. Trustee based the Sanctions Motion on the following grounds: (1) Ortiz re-filed for bankruptcy in violation of Judge Isgur's dismissal order with prejudice; (2) Ortiz caused unreasonable delay prejudicial to his creditors in the pending case when he filed for bankruptcy as an ineligible debtor; (3) Ortiz further caused unreasonable delay prejudicial to his creditors in the pending case when he failed to file complete schedules, statements, and lists of creditors; and (4) Ortiz filed for bankruptcy in bad faith. *Id.*

10.    On August 9, 2005, this Court held a hearing on the Sanctions Motion.  Ortiz represented to the Court that he was unaware that Judge Isgur's dismissal order was with prejudice and requested that this Court abate the pending case so that he could return to Judge Isgur to seek relief from the order in the first case: specifically, to request that Judge Isgur vacate the dismissal order with prejudice and issue an order of dismissal without prejudice.  The U.S. Trustee did not oppose Ortiz's request.  Accordingly, this Court abated the pending case, set a status conference for October 25, 2005, and ordered that Ortiz, in the first case, file his motion to reconsider, modify, or vacate Judge Isgur's dismissal order and obtain a hearing within the 77 days between the August 9, 2005 hearing and the October 25, 2005 scheduling conference.  Thereafter, the U.S. Trustee filed a proposed Order Abating Case and Setting Status Conference, which both Ortiz and the U.S. Trustee signed, approving it as to form, ordering that: (1) the pending case be abated until further order of the Court; (2) a status conference be held on October 25, 2005; and (3) Ortiz appear at the October 25, 2005 status

conference. [Docket No. 9.] On August 18, 2005, the Court signed the Order Abating Case and Setting Status Conference. [Docket No. 10.]

11. On September 20, 2005, Covarrubias and Villareal filed the Creditor's Joinder in U.S. Trustee's Motion for Sanctions and Request for Evidentiary Hearing. [Docket No. 14.]

12. On September 27, 2005, the U.S. Trustee filed a Motion for Evidentiary Hearing, requesting that this Court hold a hearing on the Sanctions Motion on the same day and time as the status conference set for October 25, 2005. In the Motion for Evidentiary Hearing, the Trustee also noted: "Based on information and belief, debtor has taken no action in the prior case and recent creditor activity suggests this delay is prejudicial to creditors." *Id.* Ortiz never responded to the Motion for Evidentiary Hearing; and, on September 29, 2005, this Court signed an Order Setting Hearing on the Sanctions Motion for October 25, 2005.

13. At the October 25, 2005 continuance of the hearing on the Sanctions Motion, exhibits were admitted, and the Court heard the testimony of Ortiz and his creditors, Villareal and Covarrubias. The Court also heard testimony from William Weber (Weber), counsel for Villareal and Covarrubias.

14. At the October 25, 2005 hearing, the testimony revealed that Ortiz had taken no action whatsoever to seek modification or vacation of Judge Isgur's dismissal order with prejudice.

15. During the October 25, 2005 hearing, counsel for the U.S. Trustee specifically asked Ortiz whether, after filing the pending case but before the U.S. Trustee's filing of the Sanctions Motion, Ortiz received a call from the U.S. Trustee's office suggesting that Ortiz seek either modification or vacation of Judge Isgur's dismissal order. Ortiz admitted that he did receive the call. Counsel for the U.S. Trustee then asked whether Ortiz sought such relief from Judge Isgur's dismissal Order. Ortiz testified that he did not.

16.      Ortiz further testified that he did not seek modification or vacation of Judge Isgur's dismissal order after the U.S. Trustee filed the Sanctions Motion and this Court abated the pending case so that Ortiz could seek such relief.

17.      Additionally, in both the first case and the pending case, Ortiz failed to timely file accurate and complete schedules, statements of financial affairs, and creditors' matrices. Ortiz also failed to schedule all of his debts in both cases. Ortiz offered no good reason for these omissions.

18.      Ortiz also failed to attend the § 341 meeting of creditors in the first case. Ortiz provided no good reason for his failure to do so.

19.      Ortiz also claimed that he did not receive a copy of Judge Isgur's dismissal order and other documents in the first and pending case because he had changed addresses. Ortiz failed to provide notice to the Court and Clerk of any address change.[4]

20.      Villarreal incurred $600.00 in fees and $150.00 for the filing fee for retaining Weber to represent him with regard to Villareal's Motion for Relief from Stay filed in the first case. [Case No. 05-30453, Docket No. 3.]

21.      Covarrubias incurred $600.00 in fees and $150.00 for the filing fee for retaining Weber to represent with regard to Covarrubias' Motion for Relief from Stay filed in the pending case. [Docket No. 12.]

22.      Weber spent 1.50 hours drafting the Creditor's Joinder in U.S. Trustee's Motion for Sanctions and Request for Evidentiary Hearing (the Joinder) [Docket No. 14] and consulting with counsel for the U.S. Trustee. Weber spent an additional 2.50 hours preparing for the October 25, 2005 evidentiary hearing. Weber also spent 6.00 hours representing Villarreal

---

[4]The addresses which the Clerk used were those mailing addresses set forth in the petitions that Ortiz filed initiating the first case and the pending case.

and Covarrubias during the October 25, 2005 hearing.  Accordingly, Weber spent a total of 10 hours prosecuting the Joinder on behalf of both Villareal and Covarrubias.

23.     Weber's hourly rate is $225.00 per hour.  Weber's hourly rate is reasonable and fair, given his many years of experience practicing bankruptcy law.

24.     In addition to the $750.00 Villarreal and Covarrubias each incurred in retaining Weber, Villareal and Covarrubias were jointly and severally liable to Weber for the $2,250.00 that Weber billed in prosecuting the Joinder to the U.S. Trustee's Sanctions Motion in the pending case.

25.     At the conclusion of the October 25, 2005 hearing, the Court recited findings of fact and conclusions of law into the record.  Among other things, the Court found that Ortiz had abused the Bankruptcy Code by failing to schedule all of his creditors and by filing incomplete and inaccurate schedules, statements of financial affairs, and creditor matrices. The Court further found that Ortiz abused the Bankruptcy Code and Bankruptcy Rules by directly violating Judge Isgur's dismissal order with prejudice to refiling for 180 days when Ortiz filed the pending case approximately one month of Judge Isgur's dismissal of the first case. The Court further found that Ortiz filed both the first case and the pending case in bad faith. The Court sanctioned Ortiz by ordering him to pay attorney's fees and expenses in the amount of $1,875.00 each to Villareal and Covorrubias.[5] The Court indicated that it would consider what further sanctions were appropriate. Additionally, the Court allowed the parties until October 31, 2005 to brief the issue of whether the Court could sanction Ortiz to pay Villareal and Covarrubias for the damages they sustained as a result of Ortiz's bad faith

---

[5]Weber's total fees of $2,250.00, when divided by two, equals $1,125.00.  The sum of $1,125.00 plus $750.00 (the amount which Villareal and Covarrubias each paid to Weber) equals $1,875.00.

filings of both the first case and the pending cases. The Court continued the hearing until November 1, 2005 for consideration of the damages issue.

26.    Timothy A. Hootman (Hootman) appeared on behalf of Ortiz at the November 1, 2005 hearing, announced that he was appearing at the hearing free of charge, and moved to continue the hearing for two weeks, indicating that Ortiz and his creditors, Villareal and Covarrubias, could likely settle their differences in that time. Weber announced that his clients opposed the motion. The attorney for the U.S. Trustee indicated that he did not oppose the motion. The Court denied Hootman's motion for continuance on behalf of Ortiz. The Court heard the arguments of counsel and announced additional sanctions against Ortiz and dismissed the pending case with prejudice to filing for one year.

27.    This Court's order was reduced to writing in the Sanctions Order, which was entered on the docket on November 17, 2005, and ordered as follows: (1) the pending case was dismissed with prejudice; (2) Ortiz was barred from refiling bankruptcy for one year unless he requested and received prior permission from a bankruptcy judge for the Southern District of Texas; (3) Ortiz was sanctioned $1,000.00 for filing both cases in bad faith; (4) Ortiz was ordered to pay the $1,000.00 to the Clerk of the Court within 60 days of entry of the Sanctions Order and present proof of the payment to the U.S. Trustee; (5) by no later than January 25, 2006, the counsel for the U.S. Trustee was required to file a certificate of payment with the Court setting forth whether Ortiz had paid the $1,000.00; (6) Ortiz was ordered to pay  $1,875.00 to Villareal by December 1, 2005; and (7) Ortiz was to pay $1,875.00 to Covarrubias by December 1, 2005. [Docket No. 26.]

28.     On March 31, 2006, the U.S. Trustee filed a Certificate of Non Compliance/Non Payment. [Docket No. 30.][6]  This Certificate set forth that: "Upon investigation, the United States Trustee has learned that David G. Ortiz has failed to comply with the above referenced provisions of the Court's Order." *Id.*

29.     After receiving the U.S. Trustee's Certificate of Non Compliance/Non Payment, on March 28, 2006, this Court ordered Ortiz to appear in court on April 21, 2006 and show cause why he should not be sanctioned and held in civil contempt for failing to comply with this Court's Sanctions Order of November 17, 2005 (the Show Cause Order).  [Docket No. 31.]  This Court ordered "that if David G. Ortiz fails to appear at this hearing, then this Court will issue a bench warrant directing the U.S. Marshal to produce him in this Court. Civil contempt may be brought against him with the possibility of incarceration or money sanctions."  [Docket No. 31.]  The Show Cause Order was served on Ortiz's address of record with the Clerk's Office. [Docket No. 32.]  Additionally, the U.S. Trustee had Ortiz personally served with a copy of the November 17, 2005 Sanctions Order and with a subpoena commanding Ortiz's appearance at the April 21, 2006 show cause hearing.  [Docket No. 33.]

30.     On April 12, 2006, counsel for the U.S. Trustee filed a Motion to Excuse Counsel from the April 21, 2006 Hearing [Docket No. 34] and a Motion for Emergency Expedited Consideration of the Motion to Excuse Counsel from Attending the April 21, 2006 Hearing [Docket No. 35].  The Court granted both motions on the same day and continued the show cause hearing until May 10, 2006.

---

[6]The U.S. Trustee's Certificate of Non Compliance/Non Payment appears on the docket in this case at Docket Nos. 29 and 30. The documents at Docket Nos. 29 and 30 appear to be identical. Therefore, this Court will refer the Certificate of Non Compliance/Non Payment as Docket No. 30.

31.   Ortiz failed to appear at the May 10, 2006 show cause hearing. Counsel for the U.S. Trustee did appear and informed the Court that Ortiz had received both oral and written notice of the May 10, 2006 hearing. Counsel for the U.S. Trustee also indicated that his process server spoke with Ortiz by telephone and made Ortiz aware of the date and time of the hearing. Ortiz committed to meet the process server to accept the subpoena and order resetting the show cause hearing to May 10, 2006. Ortiz failed to live up to this commitment. Out of an abundance of caution, the Court called the case once again later in the day to determine whether Ortiz decided to appear. Once again, Ortiz failed to appear. Therefore, on May 10, 2006, this Court issued a bench warrant, ordering the U.S. Marshal to take Ortiz into custody and produce him in court. [Docket No 42.]

32.   On May 15, 2006, the Court issued another bench warrant, which set forth as follows:

> At approximately 5:00 p.m., on May 10, 2006, the United States Marshal assigned to enforce the Bench Warrant received a telephone call from Attorney Maria Elena Navarro (Navarro), who indicated that she was calling on behalf of Ortiz (not as his attorney, but as an intermediary), left her telephone number, and advised the Marshal that Ortiz' attorney, Timothy A. Hootman, would be returning from the country of Jordan at approximately 7:00 p.m. on May 11, 2006. Navarro indicated to the Marshal that she would find Ortiz, would notify him of the Bench Warrant, and would then contact the Marshal shortly after speaking with Ortiz.

> At or about this time, the Marshal assigned to enforce the Bench Warrant confirmed that Ortiz was not at his home or either of his two office addresses on file with the Clerk's office. One office bore signs indicating the property was for sale. The other office was an office shared by several attorneys. A member of the support staff at the second office indicated that Ortiz had not used his office for approximately three (3) months and that no one at this office had heard from Ortiz for approximately three (3) weeks. The Marshal left written notice of the Bench Warrant at the second office at approximately 9:30 a.m. on May 11, 2006.

> On May 11 and 12, 2006, the Marshal assigned to the case attempted to contact Navarro at the number that she left on her voicemail of May 10, 2006. The Marshal was unable to reach Navarro. Navarro's assistant

indicated that she was in court and would return the Marshal's call. Navarro did not return the Marshal's call.

On May 15, 2006, the Marshal again attempted to reach Navarro. She initially responded that she was unaware of the whereabouts of Ortiz, that she had had no contact with him since May 12, 2006, and that she could not speak at the moment as she was in state court. Navarro said that she would call the Marshal back shortly. When Navarro did not call the Marshal back, he left a message reminding her of the importance of the Bench Warrant. Navarro telephoned back and indicated that contrary to what she had initially represented to the Marshal, she had in fact heard from Ortiz earlier in the day, as Ortiz had in fact left a message with her earlier in the morning. Upon the Marshal's request, she left the number from which Ortiz telephoned her. When the Marshal attempted to contact Ortiz via that number, it was not in service as there was only a continuous busy signal upon dialing the number. Thus, the number that Navarro provided the Marshal was not a good number.

While Navarro has asserted that she is not Ortiz' attorney in this matter, after the Marshal attempted to contact Ortiz to enforce the Bench Warrant, Navarro, on behalf of Ortiz, affirmatively contacted the Marshal herself. Navarro asserted that she could contact—and has since contacted—Ortiz about the Bench Warrant. The Court therefore construes that Navarro is Ortiz' agent.

Based on the above-described circumstances, the United States Marshal Service is ORDERED to arrest and produce Maria Elena Navarro, female . . . to show cause why she should not be held in civil contempt for her obstruction of the United States Marshal Service enforcing this Court's Bench Warrant. Maria Elena Navarro shall [be] brought before this Court in Courtroom 600, 6th Floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

[Docket No. 42.]

33.     Later, on May 15, 2006, Navarro appeared before this Court. She testified that she was

aware that the Court had issued a bench warrant against Ortiz. Navarro further testified that

Ortiz met her on May 10 or 11, 2006, that he was aware of the May 10, 2006 bench warrant

at that time, that he wanted to speak with Hootman,[7] and that he did not have the money to

pay what he owed pursuant to the Sanctions Order of November 17, 2005. Navarro also

---

[7]Hootman had been out of the country and returned on the evening of May 11, 2006.

indicated that neither Hootman nor she represented Ortiz. The Court ordered Navarro to call the U.S. Marshal's Office twice a day to inform the Marshals of any communication that she had with Ortiz until ordered otherwise.[8]

34.   On May 16, 2006, this Court signed its Order Imposing Additional Sanctions on David G. Ortiz for Failure to Comply with Orders of this Court (the Second Sanctions Order), which ordered as follows: (1) "for each day that Mr. Ortiz fails to surrender himself to the U.S. Marshal, he shall pay the sum of $500.00 per day to the Clerk of the Court;" (2) "for each day that Mr. Ortiz fails to pay the $1,000.00 sanction that he is required to pay pursuant to this Court's Sanctions Order of November 17, 2005, he shall pay the sum of $250.00 per day;" (3) Hootman shall appear in this Court on May 18, 2006, at 9:00 a.m. "to report to this Court whether he has been able to contact Mr. Ortiz and read to him this Order." [Docket No. 43.]

35.   Ortiz finally appeared before this Court on May 18, 2006, represented not by Hootman, but by Richard Fuqua (Fuqua). On this same day, Ortiz paid the $1,000.00 sanction to the Clerk of the Court as initially ordered in this Court's Sanctions Order of November 17, 2005.

36.   At the May 18, 2006 hearing, the Court heard testimony from Ortiz and Hootman, and exhibits were admitted. Ortiz testified that Hootman informed Ortiz that he (i.e. Hootman) could not appear at the May 10, 2006 resetting of the show cause hearing as he would be out of the county on that date. Ortiz further testified that just before the May 10, 2006 hearing, he contacted Navarro to determine if Hootman had made arrangements to reset or have another attorney cover the May 10, 2006 show cause hearing. Ortiz testified that Navarro was unaware of any arrangements, that she could not locate documents evidencing such

---

[8]The Court notes that the U.S. Marshal's Office had made repeated attempts, without success, to locate Ortiz.

arrangements, and that she would not appear in Hootman's place because she was unfamiliar with the case. Ortiz testified that he did not attend the May 10, 2006 hearing because he claimed that Navarro had represented to him that Hootman would not leave town with unfinished business such as failing to seek a resetting of the hearing.[9]

37.    Ortiz became aware of the bench warrant soon after this Court issued it on May 10, 2006. Thereafter, Ortiz deliberately evaded the U.S. Marshal. Ortiz testified that from May 12 through May 18, 2006, he stayed in a local hotel, then moved from that hotel to his house during the weekend, and then moved from his house to a different local hotel. Ortiz took these actions in order to deliberately evade the Marshals who were attempting to take him into custody.

38.    At the conclusion of the May 18, 2006 hearing, this Court issued yet another order sanctioning Ortiz (the Third Sanctions Order), which ordered him to: (1) write a letter of apology to the U.S. Marshal for not turning himself in immediately when the Marshals called him, for making the Marshal's office spend substantial time and use numerous personnel in attempting to locate him, and for forcing the expenditure of taxpayer dollars in the efforts to locate him; (2) contact the Texas Lawyers' Assistance Program to explore the need to receive counseling; (3) take 10 hours of Continuing Legal Education (CLE) course(s) on the practice of bankruptcy, with two of those hours being ethics credits, if he planned to appear in the future in the Bankruptcy Court for the Southern District of Texas; (4) find alternative counsel for a client whom he was still representing in a Chapter 7 case;[10] and (5) either pay an

---

[9]The Court wants to emphasize that it does not believe this testimony. Even if it were true, such circumstances do not absolve Ortiz of his duty, as an officer of this Court, to appear in the courtroom when ordered to do so.

[10]Given Ortiz's conduct in his own Chapter 7 cases, this Court was concerned about his representation of any of his own clients who had filed bankruptcy petitions. It turned out that Ortiz was counsel of record for one debtor: Gloria H. Nava, who had filed a Chapter 7 petition on February 22, 2006, in the Southern District of Texas, Houston

additional $750.00 as a sanction or write the following sentence 750 times: "I will respect the judicial system, and such respect includes obeying all court orders." The Court ordered Ortiz to comply with these sanctions by May 23, 2006.

39.   When the show cause hearing reconvened on May 23, 2006, Ortiz presented evidence of compliance with this Court's prior orders, except he tendered 700 sentences instead of 750, and he had not paid Villareal and Covarrubias the aggregate amount of $3,750.00 ($1,875.00 to each of them). The Court ordered Ortiz to pay, within two weeks, the $1,875.00 he owed to each Villareal and Covarrubias pursuant to this Court's November 17, 2005 Sanctions Order. [Docket No. 26] Ortiz also provided proof that he had taken the 10 hours of CLE as ordered. This Court continued the hearing again until June 6, 2006.

40.   At the continued hearing held on June 6, 2006, Ortiz presented the remaining 50 sentences and two cashier's checks for the $1,875.00 owed each to Villareal and Covarrubias.

### III. CONCLUSIONS OF LAW

**A.   Jurisdiction**

This Court has jurisdiction over this case pursuant to: (1) 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O); (2) the Court's inherent power to regulate the practice of law and the parties before it, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); and (3) 11 U.S.C. § 105.

---

Division (Case No. 06-30684). This case was assigned to the Honorable Karen K. Brown. Unfortunately, Ortiz did not find alternative counsel for Ms. Nava. Also unfortunately, on June 7, 2006, the Chapter 7 Trustee filed a Motion to Dismiss Ms. Nava's case because she "needed to amend the means test, file pay advices and send the Trustee required documents." [Case No. 06-30684, Docket No. 17, ¶ 3.] The relief requested in this motion was for a dismissal of Ms. Nava's case with prejudice. Regrettably, no response was filed to this motion and, not surprisingly, on July 27, 2006, Judge Brown granted the motion and dismissed Ms. Nava's case with prejudice. [Case No. 06-30684, Docket No. 23.] It appears that Ortiz's conduct has not only harmed himself; it has harmed at least one client.

**B.**     **Abuse of the Bankruptcy Process**

Based on Ortiz's acts and omissions in the first case and the pending case, this Court concludes that Ortiz abused the bankruptcy process.  The Fifth Circuit has made the following observation regarding the importance of good faith in the bankruptcy process:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. . . .  Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.

*Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071-72 (5th Cir. 1986) (citations omitted).  Ortiz's overriding motives in filing for bankruptcy twice were not to pay off his creditors, but to stay two separate evictions. [Findings of Fact Nos. 2, 3, 8.]

Additionally, "[t]he laws and jurisprudence of bankruptcy note often that there are two competing goals of bankruptcy and reorganization.  One is the satisfaction of valid claims against the estate.  The other is to allow the debtor a 'fresh start' in the marketplace." *Fin. Sec. Assurance, Inc. v. T-H Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd*, 116 F.3d 790 (5th Cir. 1997).  Ortiz abused the bankruptcy process by filing for bankruptcy without seeking to meet either of the twin goals traditionally achieved by the bankruptcy process.

     **1.**     **Ortiz filed the pending case in violation of Judge Isgur's order dismissing the first case with prejudice, an action which this Court finds is an abuse of the bankruptcy process.**

Judge Isgur dismissed the first case with prejudice to refiling for 180 days. [Finding of Fact No. 5.]  Approximately 30 days later, Ortiz filed his second case in this Court in clear violation of Judge Isgur's dismissal order with prejudice. [Finding of Fact No. 8.]  This Court finds that Ortiz,

a practicing attorney in the state of Texas, who is authorized to practice in this District, had a duty to check, track, and read the orders that are docketed in cases where he is counsel of record or representing himself *pro se. I.R.S. v. Cont'l Airlines Corp. (In re Cont'l Airlines Corp.)*, 67 B.R. 5, 7 (S.D. Tex. 1986) (recognizing that the party had an "affirmative duty to monitor the docket"); *see Warrick v. Birdsell (In re Warrick),* 278 B.R. 182, 187 (B.A.P. 9th Cir. 2002) (stating that "it is the party's affirmative duty to monitor the dockets."); *accord In re Anderson*, 330 B.R. 180, 187-88 (S.D. Tex. 2005) (quoting *Warrick*, 278 B.R. at 187); *Shepherd's Hill Dev. Co., LLC v. RAD Invs., LLC (In re Shepherds Hill Dev. Co. LLC)*, 316 B.R. 406, 415 (B.A.P. 1st Cir. 2004); *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2nd Cir. 2001); *see also In re Futronics Corp.*, 53 B.R. 126, 127 (Bankr. S.D.N.Y. 1985) (noting that it is "well settled that attorneys have a duty to monitor the dockets . . . ." and citing, *inter alia, Enerco v. Neary (In re Enerco)*, 43 B.R. 412 (Bankr. N.D. Tex. 1984)).

Ortiz failed to track Judge Isgur's dismissal order in the first case, and subsequently violated Judge Isgur's dismissal order by filing a second Chapter 7 petition the following month. [Findings of Fact Nos. 6, 7.] Such a blatant and flagrant disregard of a court order is inexcusable behavior on its own; however, it is made worse because Ortiz is a practicing attorney. Ortiz abused the bankruptcy process by filing the pending case in violation of Judge Isgur's order dismissing the first case with prejudice for 180 days.

**2. Ortiz also abused the bankruptcy process by failing to file full and complete schedules, statements, and creditors' matrices and also failing to schedule his debts in violation of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.**

By twice filing for bankruptcy but failing to adhere to the fundamental requirements of the Bankruptcy Code and Bankruptcy Rules, Ortiz abused the bankruptcy process. A debtor, among other duties, is required to file a schedule of assets and liabilities, a schedule of current income and

expenditures, a statement of financial affairs, and a creditors' matrix. "Bankruptcy cases depend upon debtors' making full, complete and honest disclosures in schedules and statements." *River Parishes Fin. of Gonzales, L.L.C. v. Robert (In re Robert)*, No. 01-11759, 2003 Bankr. LEXIS 2131 at *12 (Bankr. M.D. La. Jul. 1, 2003) (unpublished opinion) (citing *In re Dreyer*, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991). "The debtor *has an obligation* under 11 U.S.C. § 521(1) . . . to file schedules and statements truthfully and completely disclosing his or her financial affairs." *Robert*, 2003 Bankr. LEXIS 2131 at *12 (emphasis added). Ortiz failed to file truthful and complete schedules, statements, and matrices of creditors in both the first case and the pending case. [Finding of Fact No. 17.] Ortiz also failed to attend the § 341 meeting of creditors in the first case and did not provide a good reason for his failure to attend. [Finding of Fact No. 18.] These requirements are fundamental to the bankruptcy process. This Court finds that Ortiz's actions in filing twice and failing to file truthful and complete schedules, statements, and matrices of creditors in both cases, and also failing to attend the meeting of creditors in the first case, constitute an abuse of the bankruptcy process.

## C.    Bad Faith

In the pending case as well as in the first case, Ortiz filed his bankruptcy petition in bad faith. The Bankruptcy Court for the Northern District of Texas has observed that "[n]either the Bankruptcy Code nor its legislative history define 'good faith.' A finding of good faith 'depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities . . . and are based on a conglomerate of factors rather than on any single datum.'" *In re Carbaugh*, 299 B.R. 395, 399 (Bankr. N.D. Tex. 2003) (quoting *Little Creek*, 779 F.2d at 1072); *see also In re Dickerson*, 232 B.E. 894, 897 (Bankr. E.D. Tex. 1999) (noting: "'Good faith' is not specified in the [Bankruptcy] Code. Although it is not specified in the Code, good faith

18

is an implicit jurisdictional requirement for granting relief under Title 11 and that lack of good faith is a basis for dismissal.")  Further, one bankruptcy court has found "errors . . . of sufficient materiality that the court can only conclude that Debtor's schedules and statement of financial affairs were prepared with reckless disregard for the truth and were therefore submitted in bad faith." *In re Grotjohn*, No. 03-47055, 2005 Bankr. LEXIS 1358 at * 16 (Bankr. N.D. Tex. Jul. 19, 2005).

Additionally, in *Strathatos v. U.S. Tr. (In re Strathatos)*, 163 B.R. 83, 88 (N.D. Tex. 1993), the district court affirmed the bankruptcy court's order dismissing the bankruptcy case with prejudice to refiling for 24 months and ordered the debtors to pay money as a sanction for their conduct.  The district court found that the record "overwhelmingly supports the bankruptcy court's finding of a lack of good faith on the part of the debtors" in a case in which: (1) the debtors made successive filings for bankruptcy; (2) "[t]he bankruptcy petitions were obviously filed to hinder eviction proceedings;" and (3) the debtors filed the last case within four days after dismissal of the case immediately preceding it. *Id.*

The Fifth Circuit has explained that the "[r]equirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Little Creek*, 779 F.2d at 1071-72 (5th Cir. 1986) (citations omitted).  In the first case, Ortiz filed bankruptcy to stay an eviction, not to pay his debts or to seek a discharge.  [Finding of Fact Nos. 2, 8.]  Ortiz filed his first petition almost immediately after he learned that Villareal had obtained a writ of eviction and that he (i.e. Ortiz) would not be able to stop execution of the writ by appealing to the justice of the peace who issued it. [Finding of Fact No. 2.] Ortiz's motive was clearly to avoid the eviction, not to pay his debts or to seek a discharge.

Likewise, in the pending case, Ortiz filed the day before the hearing on Covarrubias' eviction suit. [Finding of Fact No. 8.]  Moreover, Ortiz filed the pending case on June 29, 2005, in direct violation of Judge Isgur's May 31, 2005 dismissal order with prejudice to refiling for 180 days. *Id.* Ortiz claimed that his address had changed, and he was unaware that the dismissal order was with prejudice to refiling because he had not received a copy of the order.  [Findings of Fact Nos. 7, 19.] The Court has serious concerns about Ortiz's credibility and believes that Ortiz, in fact, receive a copy of Judge Isgur's order of dismissal with prejudice.  However, even if Ortiz did not receive a copy of the order, he had a duty to provide notice to the Clerk of Court of his change of address, and he failed to do so.[11] [Finding of Fact No. 19.] Ortiz demonstrated blatant disregard of Judge Isgur's order by filing a second petition in this Court.  The Court finds that Ortiz's violation of Judge Isgur's order constitutes bad faith on Ortiz's part.

Ortiz further acted in bad faith by failing to file full and complete schedules, statements, and creditors' matrices in both cases.  [Finding of Fact No. 17.]  Furthermore, Ortiz did not schedule all of his debts in either case.  *Id*.  Moreover, he failed to attend the meeting of creditors in the first case. [Finding of Fact No. 18.]  These facts lead this Court to conclude that Ortiz failed to meet the fundamental obligations for a debtor in either case, which evidences bad faith.

In addition to Ortiz's bad faith in filing, he also intentionally failed to appear and show cause at the May 10, 2006 hearing why he should not be sanctioned and held in civil contempt.  [Finding of Fact No. 31.]  When Ortiz did eventually appear in this Court, he testified that he had intentionally

---

[11]Local Rule LR83.4 for the Southern District of Texas District Court, as applicable to this case through Bankruptcy Local Rule 1001(b), governs changes of address and provides as follows:

LR 83.4. **Change of Address.** Notices will be sent only to the address on file.  A lawyer or pro se litigant is responsible for keeping the clerk advised in writing of the current address.  Counsel of record and pro se litigants must include in this advice the case numbers of all pending cases in which they are participants in this district.

evaded the Marshals by hiding out at certain hotels. [Finding of Fact No. 37.]  The preceding facts lead this Court to conclude that Ortiz acted in bad faith in yet another respect.

### D.    Sanctions

Pursuant to the inherent powers of this Court, this Court has sanctioned Ortiz. *See* 11 U.S.C. § 105, *Chambers v. NASCO, Inc.*, 501 U.S. at 44.  The Court is well justified in doing so.

#### 1.    Attorney's Fees

This Court has sanctioned Ortiz in the form of attorney's fees awarded to his creditors: Villareal and Covarrubias. [Findings of Fact Nos. 27, 39.]  The Supreme Court has stated that "a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" *Chambers*, 501 U.S. at 45 (*quoting Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 18 L. Ed. 2d 475, 87 S. Ct. 1404 (1967)).  Ortiz wilfully disobeyed Judge Isgur's dismissal order in the first case, as well as this Court's orders in the pending case.  First, Ortiz filed a second petition in direct violation of Judge Isgur's dismissal order in the first case.  [Finding of Fact No. 7.] Second, Ortiz failed to comply with this Court's Sanctions Order of November 17, 2005 by failing to pay the monetary sanctions imposed upon him.  [Findings of Fact Nos. 28, 34.]  Third, Ortiz failed to comply with an order of this Court to appear at the show cause hearing. [Finding of Fact No. 31.] Fourth, Ortiz intentionally evaded the U.S. Marshals after he was aware that this Court had issued a bench warrant to take him into custody and produce him in court. [Finding of Fact No. 37.]

Even if this Court is incorrect about Ortiz's willful disobedience, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259, 44 L. Ed. 2d 1441, 95 S. Ct. 1612 (1975)).  As discussed above, Ortiz clearly acted in bad faith.  Accordingly, this Court finds that sanctioning Ortiz by requiring him to pay the

attorney's fees and costs incurred by Villarreal and Covarrubias is appropriate.[12] [Findings of Fact Nos. 21-25.]

**2.      Inherent Powers of This Court to Impose Sanctions**

Inherent powers of the judiciary allow this Court to impose various sanctions on Ortiz.  "[A] judge has inherent power to sanction a party appearing before him or her." *In re Zuniga*, 332 B.R. 760, 788 (Bankr. S.D. Tex. 2005) (citing *Chambers*, 501 U.S. at 45-46).  Furthermore, "[b]ankruptcy courts have broad leeway in forming an appropriate sanction for unethical behavior." *In re Zuniga*, 332 B.R. at 788 (citing *In re Prudhomme*, 43 F.3d 1000, 1005 (5th Cir. 1995)).  Ortiz's behavior was unethical, as he is a practicing attorney who filed two bankruptcy cases in bad faith, failed to comply with this Court's Sanctions Order of November 17, 2005, and deliberately evaded U.S. Marshals in clear violation of this Court's May 10, 2006 bench warrant. [Findings of Fact Nos. 2, 7, 8, 27, 28, 31, 34, 37.]  The $1,000.00 payment ordered to be made to the Clerk of Court, the letter of apology to the U.S. Marshal, the instruction to contact the Texas Lawyers Assistance Program, the instruction to take 10 hours of CLE courses on bankruptcy, the instruction to find alternative counsel for the client whom Ortiz represented in a bankruptcy matter, and the requirement to pay $750.00 or write 750 times "I will respect the judicial system, and such respect includes obeying all court orders" are all proper sanctions issued by a court with the inherent power to make these decisions. Given Ortiz's egregious conduct, this Court is justified in imposing the array of sanctions that it did against Ortiz.

---

[12]As noted above, Villareal and Covarrubias have been paid.  [Finding of Fact No. 40.]  The Court notes that at the May 23, 3006 hearing, Ortiz stated that he could not obtain funds sufficient to pay Villareal and Covarrubias within the two-week period ordered by this Court.  The Court declined to give Ortiz more than two weeks to come up with these funds.  Aside from the fact that Ortiz, pursuant to the Sanctions Order of November 17, 2005, was supposed to have paid Villareal and Covarrubias by December 1, 2005, the Court simply did not believe Ortiz's representation that he needed more than two weeks to obtain the funds.  The Court's view was that because Ortiz had easily found the funds to stay at hotels in order to evade the Marshals, he would be able to reach deep down into his pockets to find the monies necessary to pay Villareal and Covarrubias.  Not surprisingly, he was able to do so.

## IV. CREDIBILITY OF THE WITNESSES

This Court heard six witnesses: Villarreal, Covarrubias, Ortiz, Navarro, Hootman, and Weber.

Both Villarreal and Covarrubias testified as to their experiences with Ortiz as a tenant and the steps that Ortiz's failure to timely pay rent caused them to take in Harris County Justice Court and in this Court. This Court finds that both Villareal and Covarrubias were truthful in their testimony.

Conversely, Ortiz was not a credible witness, which this Court finds particularly disheartening given that Ortiz is a practicing attorney licensed by the state of Texas and authorized to practice in the Southern District of Texas. [Finding of Fact No. 1.] Ortiz admitted under oath that he failed to file his schedules, statements of financial affairs, and creditors' matrices. [Findings of Fact Nos. 4, 17.] Ortiz also failed to attend the meeting of creditors in the first case. [Finding of Fact No. 4.] These three requirements are fundamental to a bankruptcy case. Moreover, Ortiz has prior experience filing bankruptcy cases but nevertheless flagrantly disregarded both the Bankruptcy Rules and the Bankruptcy Code. [Finding of Fact No. 1.] His willingness to disregard the Rules and the Code underscores his lack of credibility.

Navarro appeared before this Court after this Court issued the bench warrant against her. [Findings of Fact Nos. 32, 33.] This Court does not find the testimony of Navarro entirely credible. While the limited testimony she offered may have been truthful to a certain extent, she was not completely forthcoming with information about Ortiz's whereabouts.

Hootman testified about his limited representation of Ortiz. [Finding of Fact. No. 36.] The Court found the testimony of Hootman credible.

Weber testified as to his background and experience as a bankruptcy attorney. Weber also testified about the fees he earned in his representation of Villareal and Covarrubias. The Court finds the testimony of Weber to be credible.

## V. CONCLUSION

This matter highlights the importance of complying with the professional standards expected for practicing attorneys. Ortiz is an attorney practicing in the courts of the state of Texas and in the Southern District of Texas and is held to the same professional standard as other attorneys. In these cases, Ortiz abused the bankruptcy process for his own benefit by filing two Chapter 7 petitions for the sole purpose of thwarting two evictions. He also flagrantly disobeyed Judge Isgur's order dismissing the first case with prejudice for 180 days. Then, even when this Court abated the pending case and gave Ortiz the opportunity to return to Judge Isgur to request a vacation of the order dismissing the first case with prejudice, Ortiz thumbed his nose at this opportunity, took no action to rectify the situation, and arrogantly went about his business in the apparent belief that this Court would take no action. Additionally, Ortiz failed to file complete and accurate schedules, statements of financial affairs, and creditor matrices. To make matters worse, Ortiz failed to comply with the Sanctions Order of November 17, 2005, and then deliberately failed to appear at a scheduled show cause hearing, thereby forcing this Court to issue a bench warrant. After receiving knowledge of the bench warrant, Ortiz purposefully fled from the from U.S. Marshals by hiding in certain hotels within the Houston area, thereby causing this Court to issue the Second Sanctions Order and the Third Sanctions Order. Ortiz's behavior in: (1) filing for bankruptcy in bad faith; (2) failing to fulfill his legal and professional duty of keeping track of orders; (3) failing to comply with this Court's orders; (4) failing to appear before this Court to show cause; and (5) purposefully evading the U.S.

Marshals is wholly unacceptable conduct unbecoming to the legal profession and warrants the sanctions imposed by this Court as discussed above in this Memorandum Opinion.

The appropriate orders referenced in this Memorandum Opinion have been entered on the docket.

Signed on this 13th day of October, 2006.

_____
Jeff Bohm
United States Bankruptcy Judge